UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DARRYL MORGAN                                                CIVIL ACTION

VERSUS                                                       NO. 15-3693

SHERIFF MARLIN N. GUSMAN ET AL.                             SECTION "E" (2)

## REPORT AND RECOMMENDATION

At the time of filing this complaint, plaintiff Darryl Morgan was a prisoner incarcerated in the Orleans Parish Prison system ("OPP").  He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Orleans Parish Criminal Sheriff Marlin N. Gusman, Captain Johnson, Lt. Holmes and Sgt. Watson.  Morgan alleges that while incarcerated in OPP, he was subjected to unconstitutional conditions of confinement and denied adequate medical treatment.  He seeks monetary damages for his pain and suffering.  Record Doc. No. 1 (Complaint at ¶¶ IV and V).

On October 15, 2015, I conducted a telephone conference in this matter. Participating were plaintiff pro se; Charlin Fisher, counsel for defendants.  Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Morgan testified that he was then incarcerated in OPP as a pretrial detainee awaiting trial, with his next court appearance scheduled for November 4, 2015, on

charges of attempted armed robbery and burglary. He said he was arrested on these charges on January 13, 2015, and has remained in OPP since that date.[1]

Morgan confirmed that his claims in this case arise from a single incident occurring April 25-27, 2015, when a pipe broke causing a sewage backup on the <u>first</u> floor of the Templeman 5 unit of OPP, where he was then being housed on Tier B-1, located on the <u>second</u> floor of the building.

Morgan testified that he did not see the pipe break or the sewage backup, but he learned about it from deputies, who told the inmates that "the sewage had backed up and what had happened was feces, urine and contaminated water was being drained out for three days in a row." Morgan said that he saw deputies wearing plastic bags over their shoes during this time and that "due to this, it caused sickness."

Morgan alleged that he was exposed to the sewage backup because his food was being prepared in an area where the contaminated water had leaked from the broken pipe, and "our food was coming up on a cart" with "no protection on the food" from the water leak. He complained that "we got this food for three days in a row until [the pipe leak] was completely fixed" and that the food was never delivered by another route. He said that the smell was so bad in the jail during that time that the nurse missed one day of delivery of medications to his tier. Morgan acknowledged that he did not walk in the

---

[1]Staff of the undersigned magistrate judge confirmed with the Orleans Parish Sheriff's Office Automated Inquiry System that, at the time of issuance of this report, plaintiff remained incarcerated at OPP. In addition, a review of plaintiff's criminal case reveals that trial on these charges is currently set on March 15, 2016. Orleans Parish Criminal District Court Docket Master, Case No. 523644.

water himself and did not go onto the first floor where the leak had occurred, but he alleged that his food was exposed to the water and that the water could be seen on the carts delivering the food.  He said these conditions continued for three days, during April 25-27, but the situation was fixed by April 28th.

Asked what injuries he suffered as a result of the sewage leak, Morgan testified, "I had diarrhea, . . . fever, I had a sore throat, . . . it was hard for me to breathe. . . stomach ache and headache."  He said these conditions persisted for about four or five days.  Morgan confirmed that he had received the medical records I ordered the sheriff to produce, Record Doc. Nos. 5 and 14, that he had read "some of them," and that they were accurate "far as my medications."  He confirmed that his complaints in this case include that on one day, April 26th, he did not get his medication for diabetes, Metformin, that he takes daily, because the nurse could not make her rounds on that day due to the sewage problem.  He acknowledged that the nurse returned and delivered his medication on the following day.  He said he knew he had fever during this time, not because anyone actually took his temperature, but because "I felt my head" while he was also having stomach ache and diarrhea.

Morgan testified that he had "no other choice" but to eat the food that was being delivered during that time.  He confirmed that when jail personnel cleaned up the sewage and fixed the broken pipe, his problems were resolved.

On cross-examination, Morgan said he named Sheriff Gusman as a defendant because the sheriff "is over the whole jail," in charge of the OPP facility and should have done something about the situation.  He denied telling anyone on April 29, 2015, that he was "all set" from a medical standpoint.  He confirmed that after his Metformin delivery was missed on one day during the plumbing breakdown, it was resumed the next day and continues to be delivered.

## ANALYSIS

I.     STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis.  28 U.S.C. § 1915A(a); Thompson v. Hicks, 213 F. App'x 939, 942 (11th Cir. 2007); Lewis v. Estes, 242 F.3d 375, 2000 WL 1673382, at *1 (8th Cir. 2006); Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998);  Lewis v. Sec'y, DOC, No. 2:10-CV-547-FTM-29, 2013 WL 5288989, at *2 (M.D. Fla. Sept. 19, 2013), aff'd, 589 F. App'x 950 (11th Cir. 2014). Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim upon which relief can be granted.  28 U.S.C. § 1915A(b)(1); Lewis, 589 F. App'x at 952; Thompson, 213 F. App'x at 942; Shakur, 391 F.3d at 113; Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact." <u>Davis v. Scott</u>, 157 F.3d 1003, 1005 (5th Cir. 1998); <u>Reeves v. Collins</u>, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" <u>Macias v. Raul A. (Unknown), Badge No. 153</u>, 23 F.3d 94, 97 (5th Cir. 1994) (quoting <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989)).

The purpose of a <u>Spears</u> hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  <u>Spears</u>, 766 F.2d at 180.  "[T]he <u>Spears</u> procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." <u>Davis</u>, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  <u>Wilson v. Barrientos</u>, 926 F.2d 480, 481 (5th Cir. 1991); <u>Adams v. Hansen</u>, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  <u>Spears</u>, 766 F.2d at 182.

The court may make only limited credibility determinations in a <u>Spears</u> hearing, <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir. 1997) (citing <u>Cay v. Estelle</u>, 789 F.2d 318, 326-27 (5th Cir. 1986), <u>overruled on other grounds by Denton v. Hernandez</u>, 504 U.S. 25, 112 S. Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a <u>Spears</u> hearing." <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)). However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" <u>Gobert v. Caldwell</u>, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting <u>Banuelos v. McFarland</u>, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest

which clearly does not exist.'" <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." <u>Moore</u>, 976 F.2d at 269.  A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as legally frivolous, because his claims lack an arguable basis in law, or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims.  Plaintiff's complaint, as amended by his testimony at the <u>Spears</u> hearing, fails to state a claim of violation of his constitutional rights cognizable under Section 1983, even under the broadest reading.[2]

## II.   <u>CONDITIONS OF CONFINEMENT</u>

Plaintiff's testimony confirmed his written allegations concerning unsanitary conditions resulting from a single incident of a broken pipe during his incarceration in OPP.  Morgan was a pretrial detainee at all times that form the basis of his claims in this case.  Regardless whether an inmate is a pretrial detainee or a convicted prisoner, the

---

[2]The court must "liberally construe briefs of <u>pro se</u> litigants and apply less stringent standards to parties proceeding <u>pro se</u> than to parties represented by counsel," <u>Smith v. Lonestar Constr., Inc.</u>, 452 F. App'x 475, 476 (5th Cir. 2011) (quotation omitted); <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

standard of liability is the same for episodic acts or omissions of jail officials of the type alleged in this case.  McCarty v. Zapata County, 243 Fed. Appx. 792, 2007 WL 1191019, at *1 (5th Cir. Apr. 20, 2007) (citing Gibbs v. Grimmette, 254 F.3d 545, 547 (5th Cir. 2001); Hare v. City of Corinth, 74 F.3d 633, 636 (5th Cir. 1996)); Olabisiomotosho v. City of Houston, 185 F.3d 521, 526 (5th Cir. 1999).  In Hare, the Fifth Circuit held

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650.

Here, nothing in plaintiff's written submissions or Spears testimony leads to an inference that the condition he described was the result of a prison official's act either "implement[ing] a rule or restriction or otherwise demonstrat[ing] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice."  Id. at 645. Thus, the complained-of harm is a particular act or omission of one or more officials, and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), applies.  Olabisiomotosho, 185 F.3d at 526; Tamez v. Manthey, No. 09-40310, 2009 WL 4324808, at *4 (5th Cir. 2009).

8

Applying this standard, Morgan's allegations do not rise to the level of violations of the Constitution.  Two requirements must be met before Section 1983 liability will arise for constitutional violations relating to conditions of confinement of the type plaintiff described.

First, the alleged deprivation must objectively be "sufficiently serious," which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 847 (1994).  To rise to the level of a constitutional violation, the conditions must be "'so serious as to deprive [plaintiff] of the minimal measure of life's necessities,' in this case the basic human need for sanitary conditions." Alexander v. Tippah County, 351 F.3d 626, 630 (5th Cir. 2003) (quoting Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995)).

Second, the inmate must show that a prison official was deliberately indifferent to inmate health or safety.  Farmer, 511 U.S. at 847.  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837 (emphasis added).

> The Supreme Court has recently reaffirmed that "'deliberate indifference' is a stringent standard of fault, requiring proof at a municipal actor disregarded a known or obvious consequence of his action." . . .  The "deliberate indifference" standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentionally negligent oversight[s].

Southard v. Tex. Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (quoting Bd. of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added).  "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." Norton, 122 F.3d at 291 (citing Farmer, 511 U.S. at 838-40).

Morgan's written allegations and testimony meet neither of these two requirements.  The one-time broken pipe incident described by plaintiff, while plainly not comfortable or pleasant, does not rise to a level of seriousness constituting a constitutional violation.

Serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences." Holloway v. Gunnell, 685 F.2d 150, 156 (5th Cir. 1982). Courts have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions." Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)); accord Hernandez v. Velasquez. 522 F.3d 556, 560 (5th Cir. 2008).  Short term sanitation problems, like the single incident of a broken pipe in the instant case, although admittedly unpleasant, do not amount to constitutional violations. Whitnack v. Douglas County, 16 F.3d 954, 958 (8th Cir. 1994); Knop v. Johnson, 977 F.2d 996, 1013 (6th Cir. 1992); Robinson v. Illinois State Corr. Ctr., 890 F. Supp. 715, 720 (N.D. Ill. 1995). "[J]ails must provide only reasonably adequate hygiene and sanitation conditions."

Burton v. Cameron County, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing Green v. Ferrell, 801 F.2d 765, 771 (5th Cir. 1986)); accord Benshoof v. Layton, No. 09-6044, 2009 WL 3438004, at *4 (10th Cir. Oct. 27, 2009); Gates v. Cook, 376 F.3d 323, 342 (5th Cir. 2004).

Morgan's allegations about the one-time sanitation/plumbing problem and the foul odor and resulting temporary unsanitary conditions he generally described fail to establish constitutional violations. See Davis, 157 F.3d at 1006 (no constitutional injury when plaintiff was confined in "filthy" cell) (citing Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); Davis v. St. Charles Parish Corr. Ctr., No. 10-98, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (Lemmon, J.) (citing Talib, 138 F.3d at 215); Wilson v. Lynaugh, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (Inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, 52 inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water and unsanitized living quarters, failed to state a claim. "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional.").

In two cases, the Fifth Circuit has held that extreme, virtually permanent conditions of cells that contained excrement and other filth violate the Eighth Amendment.  In Harper v. Showers, 174 F.3d 716, 716 (5th Cir. 1999), there were

"continual" conditions of "filthy, sometimes feces-smeared cells," and in <u>Gates v. Cook</u>,

376 F.3d 323, 338 (5th Cir. 2004), there were "'extremely filthy' [cells] with crusted

fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on

the walls."

By contrast, in <u>Davis</u>, the Fifth Circuit found <u>no</u> constitutional violation when a

prisoner was locked in a "management cell" for three days, where the cell was,

"according to Davis, 'just filthy, with 'blood on the walls and excretion on the floors and

bread loaf on the floor.'" <u>Davis</u>, 157 F.3d at 1004, 1006.  The appeals court quoted the

Supreme Court's holding that "'the length of confinement cannot be ignored. . . .  A

filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for

weeks or months.'" <u>Id.</u> at 1006 (quoting <u>Hutto v. Finney</u>, 437 U.S. 678, 686-87 (1978)).

The Fifth Circuit found that "Davis did not suffer an extreme deprivation of any 'minimal

civilized measure of life's necessities'" when he  was confined in the cell for only three

days.  <u>Id.</u> (quoting <u>Wilson v. Seiter</u>, 501 U.S. 294, 304 (1991)).

When compared to the conditions described by the Fifth Circuit in the foregoing

cases, the much less objectively unsanitary conditions described by Morgan to which he

was exposed, including his mere speculation that his food may have been exposed to the

leaking water, do <u>not</u> rise to the level of a constitutional violation.   Morgan

acknowledged that the broken pipe was repaired and the leak was cleaned within a few

days of the incident.  Thus, the conditions he experienced in OPP were neither <u>virtually</u>

permanent nor an extreme deprivation of the type that might offend the Constitution, and he suffered no physical injuries or serious ailments as a result of any allegedly unsanitary conditions.

As to his allegation that the pipe leak caused him to suffer diarrhea, headache and sore throat, unsanitary conditions may rise to the level of a constitutional violation only if they result in "a serious or significant . . . injury resulting from the challenged conditions." Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir.), cert. denied, 114 S. Ct. 393 (1993) (emphasis added); accord White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1993), cert. denied, 114 S. Ct. 931 (1994).   Generally, this seriousness standard for a constitutional violation requires that plaintiff must establish "a life-long handicap or permanent loss."  See Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994), overruled in part on other grounds by Hope v. Peltzer, 536 U.S. 730, 739 (2002) (citing Monmouth County v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (medical need is serious when it "results in an inmate's suffering 'a life-long handicap or permanent loss'")); Dickson v. Colman, 569 F.2d 1310, 1311 (5th Cir. 1978) (no serious medical need was demonstrated when plaintiff's high blood pressure presented no "true danger" or "serious threat" to his health).  Morgan's diarrhea, headaches and sore throat were ultimately resolved successfully and resulted in no such permanent loss. Therefore, his problems allegedly resulting from the broken pipe did not rise to the level of serious medical needs for constitutional purposes.

13

III.   <u>MEDICAL CARE</u>

Morgan was a pretrial detainee during the time period about which he complains. Before the Fifth Circuit's decision in <u>Hare v. City of Corinth</u>, 74 F.3d 633 (5th Cir. 1996), it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest.  <u>Bell v. Wolfish</u>,  441 U.S. 520, 539 (1979); <u>Cupit v. Jones</u>, 835 F.2d 82, 85 (5th Cir. 1987); <u>Mayweather v. Foti</u>, 958 F.2d 91 (5th Cir. 1992).  The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees."  <u>Pfannstiel v. City of Marion</u>, 918 F.2d 1178, 1186 (5th Cir. 1990), <u>abrogated on other grounds as recognized in Martin v. Thomas</u>, 973 F.2d 449, 455 (5th Cir. 1992).

In <u>Hare</u>, however, as noted above, the Fifth Circuit held:

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

<u>Hare</u>, 74 F.3d at 650. The Fifth Circuit explained that for the <u>Bell</u> "reasonable relationship" test to be applicable, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the

existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645.  If the pretrial detainee is unable to prove either, the incident will be considered to be an episodic act or omission, and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), will apply.  Shepherd v. Dallas County, 591 F.3d 445, 452 (5th Cir. 2009) (citing Bell, 441 U.S. at 539; Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997); Hare, 74 F.3d at 649); Tamez v. Manthey, 589 F.3d 764, 769-70 (5th Cir. 2009) (citing Scott, 114 F.3d at 53; Hare, 74 F.3d at 649).

In Estelle, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors.  Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment.  Estelle, 429 U.S. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Tamez, 589 F.3d at 770; Hare, 74 F.3d at 650.  "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it."  Farmer v. Brennan, 511 U.S. 825, 847

(1994).  The <u>Farmer</u> definition applies to Eighth Amendment medical claims.  <u>Reeves</u>, 27 F.3d at 176.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment.  If the court finds that one of the components of the test is not met, it need not address the other component.  <u>Davis</u>, 157 F.3d at 1005.  "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."  <u>Farmer</u>, 511 U.S. at 834 (quotation omitted).  Thus, plaintiff must show that defendants "exhibited deliberate indifference to his serious medical needs."  <u>Cooper v. Johnson</u>, 353 F. App'x 965, 967 (5th Cir. 2009) (citing <u>Wilson v. Seiter</u>, 501 U.S. 294, 297 (1991)); <u>accord</u> <u>Harris v. Hegmann</u>, 198 F.3d 153, 159 (5th Cir. 1999); <u>Mendoza v. Lynaugh</u>, 989 F.2d 191, 193 (5th Cir. 1993).

Further, plaintiff must establish that defendant possessed a culpable state of mind.  <u>Farmer</u>, 511 U.S. at 838 (citing <u>Wilson</u>, 501 U.S. at 298).  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  <u>Id.</u> at 837; <u>accord</u> <u>Tamez</u>, 589 F.3d at 770 (citing <u>Thompson v. Upshur County</u>, 245 F.3d 447, 458-59 (5th Cir. 2001)).  "Such a showing requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him

16

incorrectly, or engaged in any similar conduct that would <u>clearly evince a wanton</u> <u>disregard</u> for any serious medical needs.'"  <u>Brewster v. Dretke</u>, 587 F.3d 764, 770 (5th Cir. 2009), <u>cert. denied</u>, 130 S. Ct. 3368 (2010) (quoting <u>Domino v. Texas Dep't of Crim.</u> <u>Justice</u>, 239 F.3d 752, 756 (5th Cir. 2001)) (emphasis added).

> The Supreme Court has recently reaffirmed that "'deliberate indifference' is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." . . .  The "deliberate indifference" standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentionally negligent oversight[s].

<u>Southard v. Texas Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (quoting <u>Board</u> <u>of County Comm'rs v. Brown</u>, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added); <u>accord</u> <u>Tamez</u>, 589 F.3d at 770. "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference."  <u>Norton v.</u> <u>Dimazana</u>, 122 F.3d 286, 291 (5th Cir. 1997).

    In the instant case, plaintiff's pleadings, as expanded by his testimony, establish that nothing more than episodic acts or omissions as defined in <u>Hare</u> are at issue.  <u>See</u> <u>Tamez</u>, 589 F.3d at 770 (defendants' alleged refusal "to provide [prisoner] with immediate medical treatment qualifies as an 'episodic act or omission'").  Therefore, the "deliberate indifference" standard applies, and Morgan must allege facts sufficient to establish that defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it.  In this case, plaintiff wholly fails to allege facts sufficient to satisfy the stringent "deliberate indifference" standard.

Initially, it cannot be concluded that the diarrhea, headaches and sore throat that he described presented a serious medical need that posed a substantial risk of harm for purposes of constitutional analysis.  As discussed above, Morgan did not suffer "a life-long handicap or permanent loss" of the type required to constitute a serious medical need for constitutional purposes.  See Hill, 40 F.3d at 1188; (citing Monmouth, 834 F.2d at 347 ("Where the delay [in medical care] results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is serious.'")); see also Fourte v. Faulkner Cnty., 746 F.3d 384, 389 (8th Cir. 2014) (high blood pressure readings alone do not indicate serious medical need); Banks v. Mannoia, 890 F. Supp. 95, 99 (N.D.N.Y. 1995) ("bowel problems" and headaches not considered serious medical problems); Griffin v. DeRobertis, 557 F. Supp. 302, 306 (N.D. Ill. 1983) (aches and sore throat not serious). Dickson v. Colman, 569 F.2d 1310, 1311 (5th Cir. 1978) (no serious medical need when plaintiff's high blood pressure presented no "true danger" or "serious threat" to his health).  As Morgan acknowledged, his minor conditions consisting of diarrhea, headaches and sore throat were successfully resolved.

Even assuming, however, without concluding that plaintiff's condition presented a serious medical need for constitutional purposes, Morgan has alleged facts, confirmed by his testimony and the medical records, that negate any inference of deliberate indifference by jail officials.  His complaint, as amended by his testimony and confirmed

by the medical records, shows that he received constitutionally adequate medical care while incarcerated in OPP.

Morgan's minor, self-diagnosed problems arising from the pipe leak were resolved when the leak was repaired and the water cleaned within days of the incident.  Morgan's principal claim concerning his medical care is that the pipe break prevented an OPP nurse from delivering his daily diabetes medication on a single day.  He acknowledged, however, that the delivery of his Metformin dose resumed on the following day and has been made every day since that time.

Courts have repeatedly concluded that occasional missed doses of medication do not rise to the level of a constitutional violation. See Williams v. Cearlock, 993 F. Supp. 1192, 1196 (C.D. Ill. 1998); see also West v. Millen, No. 02-4055, 2003 WL 22435692, at *3 (7th Cir. Oct. 9, 2003) (unpublished), cert. denied, 541 U.S. 944 (2004); Oden v. Conklin, No. 94-2504, 1995 WL 632467, at *1 (7th Cir. Oct. 25, 1995) (unpublished); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); Boutte v. Bowers, No. 3:01-CV-1084-G, 2001 WL 1041761, at *3 (N.D. Tex. Aug. 30, 2001).  Moreover, it is clear that Morgan's medication was not withheld intentionally or through the deliberate indifference of prison authorities.  Rather, it was an unfortunate, one-time consequence resulting from an unanticipated and unintentional broken pipe.  Morgan has not identified and his medical records contain no indication that his diabetes was exacerbated in any way by the one-time failure to deliver a single day's Metformin dose.  Thus, this record

19

does not support an inference that defendants were deliberately indifferent to plaintiff's serious medical needs in the constitutional sense.

Although Morgan has alleged delay in receiving his dose of Metformin, mere delay in receiving care is not in and of itself a constitutional violation.  Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006); Mendoza, 989 F.2d at 195; Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990).  Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs.  Wilson, 501 U.S. at 298. No such showing can be made in this case in light of the immediate resumption of his Metformin dosage delivery after it was missed on a single day and the resolution of his other minor medical issues when the temporary plumbing problem was repaired within only a few days.  See Williams v. Browning, No. V-03-157, 2006 WL 83433, at *1, *3 (S.D. Tex. Jan. 11, 2006) (inmate with diabetes, hypertension, anxiety and chronic knee ailment who alleged that he was unable to obtain his medications timely, but did not establish any substantial harm from the delay, failed to state a claim for deliberate indifference).

Morgan's complaint in this case about his medical care fails to state a claim of violation of his constitutional rights sufficient to obtain relief under Section 1983 because he cannot establish either serious medical needs resulting from the temporary plumbing problem or deliberate indifference under the applicable constitutional standard.  For all of the foregoing reasons, plaintiff's complaints in this case about his medical care

advance a legally frivolous argument and fail to state a claim for relief based upon violation of his constitutional rights under Section 1983.

## **RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[3]

New Orleans, Louisiana, this ____14th____ day of January, 2016.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[3]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.